The next matter, number 25-1735, Susan Flaherty et al. v. Amigos Del Mar LTD. At this time, would counsel for the appellant please introduce himself on the record. Good morning, your honors. My name is John Bromley and I represent Amigos Del Mar. May it please the court, I'd like to argue for five minutes with three minutes to co-counsel attorney Jeanne Donahue and then two minutes for rebuttal. Okay, two minutes for rebuttal. Thank you, your honor. We represent the appellant, Amigos Del Mar, and Jeanne Donahue will address Rules 60B-4 and 6. I'll be addressing form of nonconvenience and personal and subject matter jurisdiction and why this case doesn't belong here, not just this court, but in this country. On direct appeal, as we have here, the courts review the subject matter as de novo. Let me ask you, was form of nonconvenience argued below? This is first mention, I could be wrong, but I've read the opinion, I've read the briefs, and I hadn't seen form of nonconvenience. Well, there's two answers to that. Document 79 of the lower court's docket, it was brought up, but the problem we ran into in this case is up until the judge's decision to where the order issued in 2025, the thinking was that this was on the high seas. In fact, it was in the territorial waters of Belize. It was not in the high seas. And there's some confusion over the terms navigable waters, high seas, and territorial waters. If you think of a Venn diagram, this is navigable waters. Within that Venn diagram, you've got the high seas and you've got territorial waters going out to the 12-mile mark, or in Belize, they recognize it out to the 18-mile mark. So under the assumption that this was something that had occurred on the high seas, that changed the analysis. Had the analysis been territorial waters, it changes things, because that's something that is part of a sovereign nation's, it might as well be terra firma. It's not the ground, but the territorial sea is part of that sovereign nation's area of control and possession. So this is a case where the plaintiff went out on a dive boat. We know the facts. I know you know the facts, Your Honor, and forgive me, forgive my indulgence of the court, but if you take the same situation and you put Ms. Paz, who's listening by the live stream, my client, out on a dive boat off the coast of Massachusetts, and the same thing happens, and she goes home to Belize and sues all the defendants that are Massachusetts-based defendants, they're not hopping a plane to Belize, not anytime soon. So they did what was proper. There was no reason for them to come to a jurisdiction that had no jurisdiction over them. So the initial analysis, the second part of my answer, is that the courts at every level of review, including this appellate review that we're doing now, have a duty to first assess, is this the proper form? But it's been raised in the form of jurisdiction. That's the argument, jurisdictional, but not forum nonconvenience. Well, I beg to differ, Your Honor, only because the Supreme Court – But in the briefs, I don't see any mention of forum nonconvenience. In our brief, we talk about forum nonconvenience, and we also cite to the Sinochem case, which is the Supreme Court case 549 U.S. 422, it's a 2007 case. Okay, I see, at page 21, yeah, okay. Yes, so forgive me, Your Honor, but – What I was saying, in the district court opinion, there's no mention of forum nonconvenience. Not in her opinion, no, but that's where she finally determines that this is territorial waters, and in the hearing transcript, you also find she says this is territorial waters. So when we look at this case, the subject matter and personal jurisdiction is difficult to determine. And if that's the case under Sinochem, the Supreme Court has instructed that forum nonconvenience considerations weigh heavily in favor of dismissal. The court should properly take the less burdensome course. Instead of, as the court did here, an extended amount of, well, limited discovery to determine any jurisdictional issues, having a hearing, and then rendering a decision based on jurisdiction. The court simply did not have jurisdiction, either subject matter or personal. On personal jurisdiction, I have a question. Is there a waiver problem? Because as I understand it, you did not argue the long-arm statute below. Now on appeal, it seems that there's been a switch of horses, and now it's an argument on due process. But that wasn't argued below. So do we have a problem there? I see I'm out of time. May I have a response? No, please answer. Okay. There's not a problem there only because it was argued by the appellees. So if I'm understanding your question correctly, for personal jurisdiction, I'm sorry, exactly what were you? So my question is, well, what was your personal jurisdiction argument below, long-arm or due process? Well, actually neither, because long-arm didn't apply. So they argued long-arm. We did not, because long-arm didn't apply. It didn't snare us into the jurisdiction, because none of the elements in the long-arm statute, including subpart D, applies to my client. So we didn't argue that long-arm statute applies. In fact, we argued the opposite on appeal, that it doesn't apply, because they argued that it did apply. I understand that you're arguing that it doesn't apply. But did you argue that personal jurisdiction failed under long-arm statute below, or did you argue that there's no personal jurisdiction because of the due process argument? We actually argued that because the only hook that has been brought to our attention by appellees, and this includes in the lower court, was a question of agency, and whether Tony Carballo was an agent of Amigos del Mar or not. In fact, he was an agent of the woman, the plaintiff, who he refers to as Mama Bear. She refers to him as her son. He was an agent of hers. He never represented Amigos del Mar. And in the limited discovery that was done, he admits he had no authority to make any deals. He had no authority to book anything or do anything. I'm out of time, so forgive me. Let's hear from a co-counsel. Please introduce yourself on the record to begin. Jeannie Donahue for the appellant. May it please the court. Go ahead. Under Rule 60b-4, this court's review is de novo. A judgment is either void or it isn't. The question for the court is whether the lower court had the requisite jurisdictional facts to set the U.S. jurisdictional machinery in motion. We submit to you that it did not. This is not a misapplication of the Supreme Court's two-part Grubart test. A legal nullity for the purpose of Rule 60b-4 is a total want of jurisdiction, not just an error in the exercise of the jurisdiction. Before we get to the substance, could you address the timeliness issue? Do we have a problem with timeliness on the 60b-4? We do not have a problem with timeliness. In the Coney Island decision, Coney Island auto parts v. Burton, the recent Supreme Court decision, they addressed the time constraints being one of reasonableness. This circuit weighs reason for delay against the delay, historically. Here, there were many justifications for delay, starting with Belize. The appellants were from Belize. It was during the time of COVID. Did the district court make an initial determination that it would not be reasonably timely? At that point, it was just assuming that Coney Island could come out in that way, and so the district court seemed to make a provisional finding on that point. Correct. In her decision, she made a footnote on page 5 and 6 of her decision saying that it was untimely. However, we submit that she didn't even have the jurisdiction. So if this court is reviewing under 60b-4 de novo, they can review that decision as well. Alternatively, it can be viewed for an abuse of discretion if she had no jurisdiction. So in the lower court's order, they cite 22 cases. Sixteen of them were cited, and then four to five were cases cited within cases. Every single one of those cases has a relationship to the U.S. on the defendant's side of the V. So in applying the Grubart test for admiralty jurisdiction, there is initially a U.S. connection on the defendant's side of the V. There is not one instance where that is not the case. So in viewing requisite facts during the jurisdictional hearing, it was made evident that the court was unclear as to the parameters of admiralty jurisdiction. It's mentioned multiple times in the record, multiple times in that hearing specifically, the jurisdictional hearing. So how, when there is no understanding of the parameters of that jurisdiction and there is an issue as to territorial waters or high seas, how can that same court find the proper requisite facts in determining jurisdiction? Isn't there like ample jurisprudence, even from this court, that you can find a tort under admiralty law in the foreign territorial waters? We do not disagree with that. We implore you to read every word of every case cited from the lower court. In every single case, there is a connection on the defendant's side of the V before the Grubart test can be applied. If we were to find that connection, then we can apply. We have maritime jurisdiction. Yes, but not conflated through personal jurisdiction. It's a finding of its own under admiralty jurisdiction. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Good morning, Your Honors. My name is Mark Dickinson. I represent the appellees, Susan Flaherty and her family. May it please the Court. Go ahead, please. Your Honors, Amigo's appeal fails for two independent reasons, either of which requires affirmance. First, as you mentioned, Justice Dudley, the Coney Island case, which recently came out, now holds that Rule 60B motions under subsection 4 are considered now by the Supreme Court as requiring that they be timely filed. Secondly, the other independent reason this case should be affirmed is that the judgment was not void because the district court had at least arguable jurisdiction. Let me go into Coney Island first. Yes, I'd like to ask you about that. Assuming that we find a potential problem on timeliness, should we remand for further explanation by the district court? I recognize there is the one sentence, but if we're reviewing for abuse of discretion, do we need some more of an explication of the court's basis before ruling on that issue? I don't think so, Your Honor, mainly because this falls so squarely as under Coney Island. In Coney Island, that was a bankruptcy proceeding where a judgment was issued in an adversary bankruptcy proceeding based on, like this case, questions of whether there was service or personal jurisdiction were at issue. At the end of the day, there was a default judgment that entered, and the Coney Island folks only popped up several years later, more like six years later, to move to vacate the judgment. Similarly here, the facts were well-developed by the court. The timeline is that the amended complaint was served in November of 2020. There was a notice that went out that default was going to be in June of 2021. The final judgment didn't enter until February of 2022, and then these appellants waited two years with full notice of then collections proceedings that proceeded in Belize before they determined that they, literally when their assets were being seized, that they needed to come or want to come back here and file this motion to vacate. I think the record is developed below, and you do have the finding by Judge Saris that she contemplated that, although it's in a footnote and not a lot of analysis. I think that this alone, the untimeliness is manifest from the record. To reach that conclusion though, is there a subsidiary question as to when the clock starts running, as to whether it's century of judgment or motion to enforce or whatever it might be? I don't think that, I think the finding, there was no such finding below, Your Honor, but I don't know that that's essential. I think it's, again, self-evident that these defendants knew they accepted service, they took a legal position. I think it's in the letter that we went back and forth that they admitted on advice of counsel that they decided not to defend in this jurisdiction initially. In fact, their papers are in contradiction. In some parts of their brief, they say it was COVID. I recognize COVID occurred, but the fact is that there's no citation in their brief. It was never developed, these excuses as to why COVID prevented them from defending here. More importantly, in the letter to the court regarding Coney Island, they admitted that, and I believe this might be in the record below as well, that they essentially stood on advice of counsel, decided they weren't going to defend as a matter of strategy. I think that we can infer that the timing, they well knew about the judgment, they knew about the legal process, and they sat on their rights. Then, like the defendant in Coney Island, it was only when the government reached in and got assets that they finally woke up and decided that now they needed to assert their rights. By any standard, the rule 60, general default rule for most of the other subsections, is it's one year you need to come back to file a motion to challenge the judgment. Here, there was over two. Your Honors, moving on to the alternative basis to affirm this judgment, is the fact that they bear an extraordinarily high standard because under Rule 60b-4, review is very limited. The Supreme Court has said in the Espinoza case that voidness is, they have to show that the judgment is void, and that's limited to the exceptional case in which the court rendered a judgment that lacked even an arguable basis for jurisdiction. That's the standard here, arguable basis. As Judge Sarris wrote in her opinion, there was more than an arguable basis on both subject matter jurisdiction and personal jurisdiction. In fact, the analysis is essentially first going to subject matter jurisdiction. This was an admiralty case. The Supreme Court's Grubart case controls, and the Supreme Court was very clear that there's a location test about where was the location of the tort, essentially. The only requirement is that the tort occurred on navigable waters, or was caused by a vessel on navigable waters. There's no limitation that it has to be U.S. navigable waters, and there's certainly, we have a string site in our brief about the very many cases that different circuits have determined admiralty jurisdiction over incidents that occur off the coast of the Cayman in foreign waters. In fact, there's a century of jurisprudence where the Supreme Court had determined that admiralty jurisdiction existed when there was a tort that occurred, for instance, in Panama. The Pan-Arco case is a Supreme Court case from, I think, the 1890s, where they recognized there was a dredge that interfered with a boat that was off the coast of Panama. There's certainly an arguable basis for admiralty jurisdiction. The court specifically found both factors, that there was location and connection to maritime activity. Let me ask you, opposing counsel addressed the issue of forum nonconvenience and raised it in the brief. What's your client's position? That was absolutely waived, Your Honor. We spend a lot of time in our brief that they waived several issues. They never properly raised forum nonconvenience below. They never raised choice of law. Let me also ask you, forum nonconvenience, going back to my conflicts of law class years ago, but it's not a jurisdictional principle. It's really like a doctrine that the court can exercise. That's my understanding as well, Your Honor. There's plenty of times where this court or the court. You can have jurisdiction, but then you have forum nonconvenience. It's kind of like you have jurisdiction, but transfer for X, Y, Z. That's right. Determination that for whatever reasons it's inconvenient for the parties. With respect to the jurisdiction, again, the judge's findings were detailed. She made a specific finding that Mr. Caravaro, basically a transaction. He acted as an agent directly of the dive shop, the Mingus Dolar dive shop here. He basically negotiated terms with Ms. Flaherty, targeted her with respect to making sure she would, but for his connection to confirm pricing, discounts, the actual terms. He also negotiated that he would accompany them on this particular dive as a guide. There was a clear and purposeful availment by Mingus Dolar. They have 85% of their business is U.S. based business. They advertise on the web, but there was a specific direct solicitation. This is not unlike the First Circuit's case, I think it's the Novak case, where we had a gentleman in a similar situation. He was directly solicited by a Hong Kong hotel to come to Hong Kong. That defendant had no ties to Massachusetts, no operations in Massachusetts, yet this court found there was personal jurisdiction when he drowned in the pool. Your response on the Marino and Fournier cases is that there was more than just a booking, that there was other outreach by the defendant. Absolutely, Judge, and I think in the Fournier case particularly, there was involved a local travel agent, and there was no direct agency found by the ultimate defendant that was more passive activity. Basically, it was more of the plaintiffs were found to, or the defendants rather were found not to have actively solicited or made a deal here in Massachusetts, so they're distinguishable. So for all those reasons, I implore you on behalf of the Flaherty's to affirm the judgment. Okay, thank you. Two minutes for rebuttal. Please reintroduce yourself on the record to begin. Jeannie Donahue for the appellants. A few points on rebuttal. First off, the agency issues that my brother mentions are somewhat reversed. Here, the solicitation in fact happened from the appellees. Ms. Flaherty reached out to Tony, who was in Belize. Everything in this matter is in Belize. There is not one element here that is in the United States. So the solicitation happened from Ms. Flaherty to Tony, who in fact was not an agent of Amigo's. It's stated multiple times in the record and in the depositions that Tony had no power to make any decisions or arrange any sales. In fact, the first time there was any negotiations was actually on the soil of Belize when the Flaherty's arrived there and negotiated in person with Amigo's. Second, as to your timely questions, there was no finding by the court below. 60B1-3 explicitly states there's a one-year time limit. 4-6 is reasonable. In Coney Island, the Supreme Court recently said that in the context of a default judgment, it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement. That's what happened here, and it was less than two years for us to file our motion. But wouldn't we still need to remand for the district court to consider that argument? I'm not sure that we could rule in your favor without having some further consideration as to when the clock starts ticking. The First Circuit's precedent is clear on this, that this is a fact-determinative distinction, that there are cases where there's a five-year time lapse and that was reasonable. I see my time has expired. We request that this court find that the motion is void, and that would include the time limit. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.